**In the Matter of Jarden
ECKLES, Debtor.**

**Jarden ECKLES, Appellee,**

**v.**

**WISCONSIN HIGHER EDUCATION
CORPORATION, Appellant.**

**Bankruptcy No. 81–02586.
Adv. No. 82–1295.
Civ. A. No. 84–C–906.**

United States District Court,
E.D. Wisconsin.

Aug. 23, 1985.

Clifton Owens, Milwaukee, Wis., for appellant.

Lloyd J. Blaney, Madison, Wis., for appellee.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

This appeal from a May 22, 1984 decision of the Bankruptcy Court in this district raises a question about the dischargeability, in bankruptcy, of certain guaranteed student loans. Bankruptcy Judge Dale E. Ihlenfeldt held that a student loan granted to Jarden Eckles by the Wisconsin Higher Education Corporation was discharged in bankruptcy. The issue is the construction to be given to one phrase in 11 U.S.C. § 523(a)(8): "exclusive of any applicable suspension of the repayment period."

The Wisconsin Higher Education Corporation, the appellant here, filed its brief on appeal on July 30, 1984. The appellee did not respond. By Order dated April 30, 1985, I granted the appellee thirty additional days with which to file a brief. No brief was filed and, accordingly, a decision will be made on the basis of the materials now in the record.

Mr. Eckles received five educational loans to help finance his higher educational pursuits. His student enrollment history spanned the period from January 9, 1969 to May 9, 1975. His obligation to repay his student loans began on March 9, 1976, five years, five months, and nineteen days before his Chapter 7 bankruptcy petition was filed on August 28, 1981. In 1979, however, Eckles had requested an alteration of his repayment obligations, stating "I am requesting reduced payments because of my living expenses and income level." In a forbearance agreement the parties agreed to the following terms:

The borrower will be permitted to reduce three/suspend five monthly payments, beginning with the October 21, 1979 payment. Regular payments will resume with the June 21, 1980 payment.

If payments are to be *reduced,* the borrower agrees to pay $25 per month for the above period.

If payments are to be *suspended,* borrower agrees to pay $28.75 interest for the suspended period in one installment(s) of $28.75 on:

February 21, 1980

In August, 1981, the petition was filed and, subsequently, Judge Ihlenfeldt determined that Eckles' student loan obligations were dischargeable. The Wisconsin Higher Education Corporation contends that that discharge was in error, and their argument revolves around the status of the three months of reduced payments to which Eckles and the Wisconsin Higher Education Corporation agreed in the forbearance agreement. If these three months are determined to be an "applicable suspension of the repayment period" the loans would not be discharged in his bankruptcy.

11 U.S.C. § 523 lists exceptions to discharge. Included are certain educational loans which are not discharged

... unless—

(A) such loan first became due before five years (*exclusive of any applicable suspension of the repayment period*) before the date of the filing of the petition ...

The statute is a marvel of drafting. Amazingly, however, everyone here seems to agree on at least some of what the statute means. The overall meaning is that the loans are discharged if the bankruptcy petition was filed five years after payments have come due. The five years, everyone agrees, is not calculated by merely looking at a date on a calendar, because periods in which payments have been suspended do not count. That is, it appears that the meaning given the statute is that five years of payments must exist between the first due date and the filing of the petition.

In this case Judge Ihlenfeldt found, and the finding is not appealed, that the loan first came due on March 9, 1976, five years, five months, and nineteen days before the Chapter 7 petition was filed on August 28, 1981. Judge Ihlenfeldt found, and appellant agrees, that there was a five-month suspension of the repayment period in the forbearance agreement, so that the five-month period is not counted toward the five years, bringing the first due date and the date of filing within five years and nineteen days of one another. The controversy exists over the three-month period in which the payments were reduced. Appellant contends that a reduction of the payments constitutes a "suspension of the repayment period" because it results in a longer repayment period for the loan. Appellant points out that the statute does not say "suspension of payments" but rather "suspension of the repayment period." A reduction of payments has the same effect as a cessation of payments—that is, both suspend the original repayment period and substitute a new, longer period. Thus, appellant argues, if effect is given to every word in the statute, a reduction of payments must be considered a suspension of the repayment period.

Judge Ihlenfeldt said no. A reduction in payments does not have the same effect under the statute as a cessation of payments.

I reverse and find that a change in the repayment schedule which in effect suspends the original repayment period and of

necessity substitutes another period is an "applicable suspension of the repayment period." The regulations read together with the legislative history of the amendment which led to § 523(a)(8), show that a balance is being struck between a concern for the debtor's ability to repay the loan and a concern with the continued viability of the student loan program. 34 C.F.R. § 682.512 states:

> The Secretary encourages a lender under the FISLP to grant forbearance for the benefit of a borrower in order to prevent a borrower from defaulting on his or her payment obligations.

A forbearance means "permitting the temporary cessation of payments, allowing an extension of time for making payments, or accepting smaller payments than were previously scheduled." The theme seems to be to allow the lender to make it easier on the borrower to repay the loan.

On the other hand, the legislative history behind the amendments to 11 U.S.C. § 523(a)(8) makes it clear that ease of repayment is a consideration, but at the same time the integrity of the student loan program is also to be protected. The amendment is designed to "exclude periods of deferment from the calculation of the first five years of the repayment period." The Committee was aware of and concerned with the possibility for the "first five years of the repayment period on a student's loan to run without the student having an actual repayment obligation during all of that period." To prevent that possibility:

> The Committee believes that the long range effect of this bill will be to maintain the credibility and stability of the student loan program and assure that future generations of students will have a viable loan program available to them.

The balance was nicely struck. The student borrower is not able to file bankruptcy and discharge his entire debt to the program. On the other hand, he is given great latitude to adjust the payments to fit his financial situation and in fact, in ways that are not relevant here, to defer the payments altogether for significant periods of time.

Reading the language "an applicable suspension of the repayment period" to include the period of time during which payments are reduced in a forbearance agreement best matches the intent of Congress. Furthermore, the definition of forbearance in the regulations includes accepting smaller payments as well as a temporary cessation of payments altogether, further lending support, in my view, to a reading of the statute to the effect that any time the original repayment period is set aside either by cessation of payments or modification of payments the repayment period has been suspended.

Common sense would seem also to support this view. To rule otherwise would allow debtors to manipulate the amount of money they must repay before they file for bankruptcy. For instance, a repayment schedule may be established under which a borrower is required to pay $60 a month. If those payments were made for five years, he would have paid $3600 in payments before he could file for bankruptcy and expect to have the loan discharged. If, however, he had obtained a reduction in the payments for some period of time, say a reduction to one-half or to $30 a month for ten months, the borrower would have to pay less than $3600 before the debt could be discharged in bankruptcy. A clever borrower under that scheme would do well to obtain reductions rather than cessations of payments, and arrive at the five year mark having repaid less of the loan but still eligible for a discharge in bankruptcy. I believe that result would thwart the concern that Congress felt for the integrity of the loan program.

IT IS THEREFORE ORDERED that the decision of the Bankruptcy Court dated May 22, 1984, is REVERSED.