**In re Nelda Florentine WILLIAMS, Debtor.**

**Nelda Florentine WILLIAMS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION, Texas Guaranteed Student Loan Corporation, Wachovia Services, Inc. and Eduserve Technologies, Inc., Defendants.**

Bankruptcy No. 195–10117–7.
Adv. No. 195–1020.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

May 22, 1996.

Dick Harris, Abilene, TX, for Debtor.

---

Doug W. Ray, Ray, Wood & Fine, L.L.P., Austin, TX, for Texas Guaranteed Student Loan Corporation.

## MEMORANDUM OF OPINION ON TOLLING OF SEVEN YEAR REQUIREMENT FOR DISCHARGE OF STUDENT LOANS

JOHN C. AKARD, Bankruptcy Judge.

The debtor requested a determination of the dischargeability of student loans which first became due more than seven years ago. The lender argued that the automatic stay of a prior bankruptcy proceeding tolled the running of the seven years, and therefore the student loans could not be discharged. This court finds that the student loans are not dischargeable in the present bankruptcy, because they have not been due for seven years.[1]

### FACTS

Nelda Florentine Williams (Debtor) obtained three loans for college in the amount of $5,000 each in 1984, 1985, and 1986 respectively. The loans were educational loans, guaranteed or insured by a governmental unit as defined in § 523(a)(8) [2]. They first became due December 1, 1987. Texas Guaranteed Student Loan Corporation is the current holder of the notes.[3] As of May 18, 1995 the amount due on the loans was $29,-682.35. No extensions or deferments in the

---

**1.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(I).

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

**3.** The United States Department of Education, Wachovia Services, Inc. and Eduserve Technologies, Inc. were named as defendants in this adversary proceeding and duly served. None of them filed an answer. Consequently, any claims which these defendants have against the Debtor are discharged.

**4.** § 523. **Exceptions to discharge.**

repayment of the loans were granted to the Debtor.

On October 26, 1987, the Debtor filed a voluntary petition under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Texas (the first bankruptcy). The Debtor filed no plan in that proceeding; nor did she attend a § 341 meeting. Early in 1988 the Debtor moved to the Dallas area and directed her attorney to dismiss the first bankruptcy. However, that case was never dismissed. Instead it was converted to a Chapter 7. The Debtor never attended a Chapter 7 § 341 meeting, never filed Chapter 7 schedules, and never received a discharge. The court dismissed the Chapter 7 bankruptcy on February 20, 1992.

On May 18, 1995 the Debtor filed the present Chapter 7 bankruptcy proceeding, unaware that the original bankruptcy had been converted and not dismissed in 1988.

### ISSUE

■ Did the automatic stay that was in effect during the first bankruptcy toll the running of the seven year requirement in § 523(a)(8)(A), thereby precluding discharge of the debtor's student loans in the present bankruptcy?

### DISCUSSION

Generally, student loans are non-dischargeable in bankruptcy. § 523(a)(8) [4].

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

There are two exceptions to this rule. First, discharges are allowed if the debtor can prove undue hardship. § 523(a)(8)(B). Secondly, discharges are allowed if it has been more than seven years since the debt first became due. § 523(a)(8)(A). The seven year period does not include any "applicable suspension of the repayment period." § 523(a)(8)(A). Thus, to determine dischargeability, one must subtract any applicable suspensions from the time between when the loans first come due and the filing of the bankruptcy in order to see if the debt falls outside the seven year period. The debate centers on the meaning of the phrase "applicable suspension of the repayment period." This is an issue of first impression in the Fifth Circuit.

The Debtor offers a Fifth Circuit tax case to illustrate the guiding principles of construction in this matter. A bankruptcy case involving tax debt is similar to a bankruptcy case involving student loan debt in that both types of debt are generally non-dischargeable, and both have exceptions to the general rule that rely on statutorily defined time limits. The Debtor offers *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993) which addressed the dischargeability of taxes. The dispute in *Quenzer* involved the dischargeability of the Quenzers' 1984 and 1985 tax liability. The Quenzers had filed a Chapter 13 petition in September 1986, converted it to Chapter 7, and voluntarily dismissed it in March 1988. In March 1990 they filed a new Chapter 7 petition, wanting to discharge the 1984 and 1985 taxes that were due more than three years prior to the filing of the second Chapter 7. The question before the court was the suspension of a priority period during an automatic stay. However, in *Quenzer* the government relied on § 108(c), which deals with suspensions that apply only to nonbankruptcy law and nonbankruptcy proceedings, and the court denied its application. Since *Quenzer* did not directly discuss the issue before this court, it is not proper precedent in the instant case [5].

### Legislative Intent

■ Where meaning is unclear, legislative intent cannot be ignored. Indeed, the Fifth Circuit refused to rigidly adhere to the provisions of the Bankruptcy Reform Act of 1978, if such action meant that the true intent of the Congress would be subverted:

> [T]hat judicial rectification was mandated, suggesting that a slavish application of § 317 of the Bankruptcy Reform Act of 1978 (repealing § 1087–3) "without regard to the obvious intention of Congress would create an absurd result in accord with neither established principles of statutory construction nor common sense."

*Wisconsin Higher Educ. Aids Bd. v. Hogan (In re Hogan)*, 707 F.2d 209, 211 (5th Cir. 1983) (quoting *New York State of Higher Educ. Serv. Corp. v. Adamo (In re Adamo)*, 619 F.2d 216, 219 (2d Cir.1980)). In *Hogan* the court held that a voluntary bankruptcy during the 11 month gap between the repeal of section 1087–3 of the Higher Education Act and the enactment of the Bankruptcy Code did not result in an automatic discharge of student loans, despite the Congressional oversight.

Since this is a matter of first impression, prudence dictates an initial look at the legislative history of § 523. The Congressional record from 1976 provides:

> The Committee bill seeks to eliminate the defense of bankruptcy for a five-year period, to avoid the situation where a student, upon graduation, files for a discharge of his loan obligation in bankruptcy, then enters upon his working career free of the debt he rightfully owes. After a five-year period, an individual who has been faithfully repaying his loan may really become bankrupt. He should not be denied this right, and is not under the Committee bill.

S.REP.No. 882, 94th Cong., 2d Sess. 32 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4713, 4744.

So from the inception of congressional action, there was a concern that student loans

---

**5.** This court will look to cases from outside the Fifth Circuit that involve student loan debt when deciding this case. However, it should be noted that there is also precedent from cases involving tax debt where the statutory time limits for collection were tolled during the automatic stay imposed by bankruptcy. *See, In re Taylor*, 81 F.3d 20 (3d Cir.1996) and *Shedd v. United States (In re Shedd)*, 190 B.R. 692 (Bankr.M.D.Fla. 1996).

should not be dischargeable without some effort on the debtor's part to repay the loan. Additionally, the record shows that there was no intent to make student loans nondischargeable without exception.

In 1979, the Senate Committee addressed the issue of the suspension of repayment obligations: "Section 3(2) of the bill would also amend 11 U.S.C. 523(a)(8) *to exclude periods of deferment from the calculation of the first five years of the repayment period.*" S.REP. No. 230, 96th Cong., 1st Sess. 2 (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 937 (emphasis added). Here Congress shows its concern that a debtor should not be able to manipulate deferments in order to defeat the five year period required before a student loan could be discharged. Noting that student loans are subject to deferment, the committee acted to remove time under a deferment from the calculation of the five year period before a student loan could be discharged.

In 1990 Congress amended § 523(a)(8)(A) of the Code to extend the required period from five to seven years before a discharge in bankruptcy of student loans could be granted. Pub.L. 101–647, § 3621(2), 104 Stat. 4965.

## Case Law

Now that the Debtor's principle case has been distinguished, and the legislative history has been examined, an inquiry into the judicial construction given the phrase "applicable suspension of the repayment period" by courts in other circuits is warranted. The majority of cases which have dealt with this issue indicated that as long as the suspension of payments was valid and predicated on some act of the debtor, such as a request for deferral, or bankruptcy, then the suspension was applicable to toll the seven year limit[6]. Unilateral action by the lender is not effective to toll the statute[7].

To assist in interpreting the case law on point, an understanding of the automatic stay is necessary. When a bankruptcy petition is filed, creditors are automatically prevented from taking any action to collect the debt. § 362(a). This protection by the automatic stay has been reinforced by the courts:

> It is equally well established that under § 362(a) of the Bankruptcy Code, the filing of a petition for voluntary, joint or involuntary bankruptcy under 11 U.S.C. §§ 301, 302 or 303 automatically stays all proceedings to collect the underlying debt in order that the bankrupt debtor may be given a breathing spell from creditors and the financial pressures that drove him into bankruptcy and to allow him to attempt a repayment or reorganization plan.

*Constitution Bank v. DiMarco,* 155 B.R. 913, 917 (E.D.Penn.1993) (citations omitted).

Unless lifted by court order, this stay against the creditors remains in effect until the case is closed, the case is dismissed, or until the discharge is granted or denied[8]. § 362(c).

---

**6.** *Huber v. Marine Midland Bank (In re Huber),* 169 B.R. 82 (Bankr.W.D.N.Y.1994) (Debtor sought and obtained deferments due to continued schooling, but later was found to be ineligible for the deferments; the court held that since the debtor requested them, the deferments tolled the seven year period). *Georgina v. Higher Educ. Assistance Found. (In re Georgina),* 124 B.R. 562 (Bankr.W.D.Mo.1991) (Nine deferments granted at the request of debtor tolled the seven year period). *Saburah v. United States Dept. of Educ. (In re Saburah),* 136 B.R. 246 (Bankr.C.D.Cal. 1992) (Automatic stay of prior bankruptcy tolled the seven year period).

**7.** *Flynn v. New Hampshire Higher Educ. Assistance Found. (In re Flynn),* 190 B.R. 139 (Bankr. D.N.H.1995) (Deferment granted retroactively without request by the debtor did not toll statute). *Connecticut Student Loan Found. v. Keenan*

*(In re Keenan),* 53 B.R. 913 (Bankr.D.Conn.1985) (Neither an invalid deferment nor a deferment not requested by the debtor tolled the seven year period).

**8.** **§ 362.  Automatic stay.**

(c)(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under Chapter 7 of this title concerning an individual or a case under Chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

To illustrate that the automatic stay is not an "applicable suspension" as contemplated by § 523, the Debtor cites *Gibson v. Virginia State Educ. Assistance Auth. (In re Gibson)*, 177 B.R. 837 (Bankr.E.D.Va.1995). In *Gibson* the court ruled that the term "applicable" modified the term "suspension" in a way that prevented the use of a prior bankruptcy to toll the seven year limit. The court in *Gibson* limited "applicable suspension" to suspensions of repayment that the lender granted in the ordinary course of business. However, the district court reversed *Gibson*, finding no indication that Congress intended to limit "applicable suspension" periods to deferments granted by the lender in the ordinary course of business. Examining both case law and statutory interpretation, the district court held that the automatic stay was an "applicable suspension of the repayment period" that tolled the seven year non-dischargeability period. *Virginia State Educ. Assistance Auth. v. Gibson (In re Gibson)*, 184 B.R. 716 (E.D.Va.1995). The district court relied on a California bankruptcy case involving a previous filing of bankruptcy and the issue of the automatic stay tolling the statute. In *Saburah v. United States Dept. of Educ. (In re Saburah)*, 136 B.R. 246 (Bankr.C.D.Cal.1992) the court held that the "length of time that the Stay was in effect in the Prior Chapter 7 is includable when calculating the applicable suspension period under Section 523(a)(8)(A)." *Id.* at 254.

The district court in *Gibson* is not the only advocate of an expansive view of § 523. Another district court interpreting § 523(a)(8)(A) found that the "applicable period" should be broadly construed:

> Amazingly, however, everyone here seems to agree on at least some of what the statute means. The overall meaning is that the loans are discharged if the bankruptcy petition was filed five years [9] after payments have come due. The five years, everyone agrees, is not calculated by merely looking at a date on a calendar, because periods in which payments have been suspended do not count.

*Eckles v. Wisconsin Higher Educ. Corp. (In re Eckles)*, 52 B.R. 433 (E.D.Wis.1985).

The *Eckles* court did not address the power of an automatic stay to toll the running of the seven year period; however, the court did hold that merely reducing payments for a three month period was enough to qualify as an "applicable suspension". This broad view of the meaning of the statute would fully support the argument that the automatic stay of a previous bankruptcy is also an "applicable suspension."

In sum, the majority of cases from both bankruptcy and district courts suggest that an interpretation of the phrase "applicable suspension" in § 523(a)(8)(A) refers to a valid period of nonpayment by the debtor. Filing a voluntary bankruptcy, with the restrictions of the automatic stay, is an "applicable suspension" contemplated by the statute.

■ The Debtor argues that the creditor could have sought relief from the automatic stay in the prior bankruptcy and, having failed to do so, should not be able to take advantage of a suspension for the duration of the prior bankruptcy. The Debtor does not cite any statute, rule, or other authority which would require the creditor to seek relief from the automatic stay, nor is the court aware of any such requirement. Therefore, the stay remained in effect as to this creditor throughout the life of the prior bankruptcy and the duration of the prior bankruptcy must be considered a period of suspension under § 523(a)(8)(A).

## CONCLUSION

In this case the Debtor initiated a bankruptcy which caused her student loan debt to be uncollectible for the time that the automatic stay was in effect. Although there was a period of seven years, five months and eighteen days between the time the loans first became due and the filing of the present bankruptcy, the four years, three months and twenty five days that the automatic stay of the previous bankruptcy was in effect was an applicable suspension that tolled the running of the statute. Therefore the Debtor's student loans have been due only three years,

**9.** Prior law had the statutory limit at five years;   it is currently seven years.

one month and twenty three days and are nondischargeable.

JUDGMENT ACCORDINGLY [10].

---

10. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.R.BANKR.P. 7052. This Memorandum will be published.