**In re Joyce WASHINGTON, Debtor.**

**Joyce Washington, Plaintiff,**

v.

**Educational Credit Management Corp., Defendant.**

**Bankruptcy No. 98–25773–WHB.**

**Adversary No. 03–1021.**

United States Bankruptcy Court, W.D. Tennessee.

Dec. 16, 2004.

Irving S. Zeitlin, Memphis, TN, for Debtor.

Charles Exum, Jackson, TN, for ECMC.

George W. Stevenson, Memphis, TN, Chapter 13 Trustee.

WILLIAM H. BROWN, Bankruptcy Judge.

## MEMORANDUM OPINION AND ORDER GRANTING EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion of Educational Credit Management Corporation ("ECMC") for summary judgment based on the "applicable suspension of the payment period" provision of former § 523(a)(8)(A) of the Bankruptcy Act, which is applicable in this case. Specifically, ECMC alleges that the 7–year repayment period for purposes of dischargeability of the Debtor's student loans was tolled during the Debtor's prior bankruptcy, thus putting the loans in repayment for only 4.52 years, and not the required 7–year period. For the reasons set forth below, the Court concludes that the 7–year repayment period required for dischargeability of the Debtor's student loans under former § 523(a)(8)(A) was tolled during the Debtor's prior bankruptcy case, and the student loans are therefore nondischargeable under that Code section. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (I).

## FACTUAL SUMMARY

The facts of this case are not in dispute. The Debtor executed five promissory notes for guaranteed student loans and one promissory note for a supplemental student loan. The six notes were subsequently assigned to ECMC, which alleges a claim in this case in the amount of $17,799.12. The student loans first went into repayment status on November 10, 1987. The Debtor then commenced her first Chapter 13 bankruptcy case[1] on October 16, 1991, and that case was ultimately dismissed on September 24, 1997 for the Debtor's failure to complete the required plan payments. That Chapter 13 case remained open for a period of approximately 2,170 days. The Debtor then commenced her second Chapter 13 case on April 27, 1998, and she received a discharge on November 25, 2003.[2]

---

1. The Debtor's prior Chapter 13 case was assigned case number 91–31591.

2. The Debtor has now filed two more Chapter 13 cases, one dismissed on August 18, 2004, and an active case number 04–33171.

The Debtor filed this adversary proceeding on October 14, 2003, initially seeking a determination that repayment of the Debtor's student loans constituted an undue hardship sufficient to discharge the debt pursuant to 11 U.S.C. § 523(a)(8). The Court dismissed the complaint on June 8, 2004, based on the Debtor's failure to establish undue hardship[3], but then reopened the adversary proceeding to permit the Debtor to amend her complaint to allege that the student loans are dischargeable under the 7–year limitations period of former § 523(a)(8)(A).

In response, ECMC has filed a motion for summary judgment alleging that the loans have not been in repayment status for the required 7–year period because the repayment period was effectively tolled during the times the Debtor has been in bankruptcy and under the protection of the automatic stay, and therefore ECMC is entitled to judgment as a matter of law.

### ISSUE

■ The sole issue presented in this proceeding is whether the 7–year repayment period required for dischargeability of the Debtor's student loans under former § 523(a)(8)(A) of the Bankruptcy Code was tolled during the Debtor's prior Chapter 13 cases.

### DISCUSSION

Prior to revision in 1998, § 523(a)(8)(A) provided an exception to the nondischargeability of student loans, and stated:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition.

11 U.S.C. § 523(a)(8)(A), repealed as part of the Higher Education Amendments of 1998 and applicable only in cases commenced on or before October 7, 1998.

■ It is the "exclusive of any applicable suspension of the repayment period" language that is at issue in this proceeding. ECMC contends that the Debtor's prior Chapter 13 case, and the resultant automatic stay of collection of the student loan debt, constituted an applicable suspension of the repayment period with the effect that the Debtor's student loans were not in repayment status for the required 7 years. A number of courts deciding this issue have determined that "an interpretation of the phrase 'applicable suspension' in § 523(a)(8)(A) refers to a valid period of nonpayment by the debtor. Filing a voluntary bankruptcy, with the restrictions of the automatic stay, is an 'applicable suspension' contemplated by the statute." *Williams v. U.S. Dep't of Educ. (In re Williams)*, 195 B.R. 644 (Bankr.N.D.Tex. 1996). *See also Saburah v. U.S. Dep't of Educ. (In re Saburah)*, 136 B.R. 246, 254 (Bankr.C.D.Cal.1992)("as a matter of law . . . the length of the time that the [s]tay was in effect in the [p]rior Chapter 7 is includable when calculating the applicable suspension period under Section

---

**3.** Specifically the Court based its ruling on the failure of the Debtor to pursue alternative repayment remedies, such as the William D. Ford Loan Consolidation Program.

523(a)(8)(A)"), and *Gibson v. Virginia State Educ. Assistance Auth.*, No. 95–2595, 1996 WL 267322, *1 (4th Cir.1996)(finding that repayment of the debtor's student loans was automatically suspended by virtue of the debtor's prior Chapter 7 bankruptcy). This Court agrees with this line of decisions and hereby adopts the view that a prior bankruptcy effectively tolls the 7–year repayment period requirement for purposes of dischargeability under § 523(a)(8)(A). The Court further concludes that a prior bankruptcy tolls the 7–year period regardless of whether the Debtor's prior case was a Chapter 7 or a Chapter 13 bankruptcy. In either case the debtor enjoys the protection of the automatic stay and the suspension of all collection efforts, and the Court finds no compelling reason to distinguish prior Chapter 7 bankruptcies from those filed under Chapter 13 for purposes of tolling. *See Seay v. First State Bank (In re Seay)*, 237 B.R. 896, 900 (Bankr.N.D.Miss.1999)("loan extensions and previous [Chapter 13] bankruptcies qualify as applicable suspensions under § 523(a)(8)(A) and must be considered when computing the seven year period.").

■ In her Response to Motion for Summary Judgment the Debtor cites *Moody v. ECMC, Inc. (In re Moody)*, 202 B.R. 720 (Bankr.S.D.Ohio 1996), distinguishing that case on the basis that the *Moody* debtor made no payments in the prior Chapter 13 case, whereas the Debtor in this case made student loan payments through her Chapter 13 plans. The *Moody* court declined to decide this issue, stating that "[b]ecause of the facts of this case, the court need not reach the question of whether there is a suspension of the repayment period when a creditor received distributions in a chapter 13 case." *Id.* at 724 n. 3. That court went on to note,

however, that "it has been found 'that any time the original repayment period is set aside either by cessation of payments *or modification of payments* the repayment period has been suspended.'" *Id.*, citing *Eckles v. Wisconsin Higher Educ. Corp. (In re Eckles)*, 52 B.R. 433, 435 (E.D.Wis. 1985) (emphasis in original). The *Eckles* court reasoned that "[a] reduction of payments has the same effect as a cessation of payments—that is, both suspend the original repayment period and substitute a new, longer period." *In re Eckles*, 52 B.R. at 434. "[A] change in the repayment schedule which in effect suspends the original repayment period and of necessity substitutes another period is an 'applicable suspension of the repayment period.'" *Id.* at 434–35. Otherwise, debtors could "manipulate the amount of money they must repay before they file for bankruptcy and thereby gain the benefits of the suspension or reduction and still discharge the debt." *Shryock v. Pittsburg State University (In re Shryock)*, 102 B.R. 217, 219 (Bankr. D.Kan.1989), citing *In re Eckles*, 52 B.R. at 435.

■ This Court has reviewed the payment schedule and accountings from the Debtor's chapter 13 cases, which were submitted as a part of the Debtor's response to the pending motion, and it is evident that ECMC was paid reduced or modified payments under the terms of the Debtor's chapter 13 plans. The Debtor's plan in her 1991 case provided for a 40% distribution to general unsecured creditors, and her 1998 case provided for a 55% payment to general unsecured creditors. ECMC's predecessors were in the unsecured class of creditors in those plans and did not receive full or regularly scheduled loan payments, nor did the student loan claims receive interest.[4]

4. Furthermore, although the Debtor in this case has not made an argument of discharge-

In this case the Debtor's student loans went into a repayment status on November 10, 1987, and she filed her first Chapter 13 bankruptcy petition on October 16, 1991. Her student loans were thus in repayment for a period of approximately 3 years and 340 days prior to the implementation of the first automatic stay. The loans went back into repayment when the prior Chapter 13 case was dismissed on September 24, 1997, until the time that her second bankruptcy case was commenced less than one year later on April 27, 1998. The stay was again lifted when the Debtor received her Chapter 13 discharge on November 25, 2003.[5] Therefore, the Debtor's student loans have not been in a repayment status for the requisite 7–year period for dischargeability. As a result, the student loan debt is nondischargeable as a matter of law.

### CONCLUSION

For the reasons set forth herein the Court concludes that the Debtor's student loan obligations to ECMC are nondischargeable under former § 523(a)(8)(A) because the Debtor's student loans have not been in repayment status for the requisite 7 years. ECMC's motion for summary judgment is therefore **GRANTED.** Upon this order becoming final, the Clerk shall close this adversary proceeding and case.

ability based on the terms of the Chapter 13 plan, a debtor cannot "discharge by declaration" her student loan debt through language in her Chapter 13 plan to the effect that the court's order confirming the plan would operate as a determination of undue hardship. *See Ruehle v. Educ. Credit Management Corp.*

*(In re Ruehle)*, 307 B.R. 28 (6th Cir. BAP 2004).

**5.** As noted in the prior footnote, there is no argument here, nor would one be sustainable, that the Debtor's discharge effected an undue hardship discharge of these student loans.